Filed 5/13/22  City of Fresno v. Dept. of Finance CA3

<u>NOT</u> <u>TO</u> <u>BE</u> PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CITY OF FRESNO et al., | |
| Plaintiffs and Respondents, | C091324 |
| v. | (Super. Ct. No. 34-2015-80002174CUWMGDS) |
| DEPARTMENT OF FINANCE et al., | |
| Defendants and Appellants. | |

California laws dissolving redevelopment agencies (RDAs) and providing for their winding-down also provided that loans from a city to its former RDA were

1

unenforceable.  (Health & Saf. Code, § 34171, subd. (d)(2).)[1]  But some loans to a former RDA may be reinstated and paid if they were "loans for money" with a "required repayment schedule."  (§ 34191.4, subd. (b)(2)(A).)

In this case, the Department of Finance (Finance) disapproved reinstatement of 13 loans from the City of Fresno (Fresno) to its former RDA.[2]  However, the trial court granted Fresno's petition for writ of mandate, finding the loans could be reinstated under section 34191.4, subdivision (b).[3]

Finance now contends the loans cannot be reinstated because (1) the loans were not "loans for money," and (2) there was no "required repayment schedule" for the loans. Considering first whether there was a "required repayment schedule" for the disputed loans, we conclude the record supports a determination there was no such schedule. Accordingly, we conclude the trial court erred by finding the loans could be reinstated under 34191.4, subdivision (b).

We will reverse the judgment.

BACKGROUND

A

Before June 2011, the Community Redevelopment Law (§ 33000, et seq.) authorized RDAs to remediate urban decay and revitalize blighted communities. (*California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 246 (*Matosantos*).)  To finance their activities, RDAs relied on "tax increment" financing --

---

[1] Undesignated statutory references are to the Health and Safety Code.

[2] Other loans were also disputed but are not at issue in this appeal.

[3] We will refer to the appellants collectively as Finance and to the respondents collectively as Fresno.

2

tax revenue attributed to the increased value of property in the redevelopment project area.  (*Ibid*.)

In June 2011, the Legislature passed Assembly Bill No. 26 (2011-2012 1st Ex. Sess.) (Assembly Bill XI 26), which dissolved RDAs and turned over the winding-down process to successor agencies.  (*Matosantos, supra*, 53 Cal.4th at pp. 250-251.)  The Legislature later adopted additional relevant provisions.  (Stats. 2012, ch. 26, § 6 (Assembly Bill No. 1484 (2011-2012 Reg. Sess.).)  We will refer to the legislation dissolving RDAs, collectively, as the "Dissolution Law."[4]

The Dissolution Law generally made agreements between an RDA and its sponsoring agency (here, the city that created the former RDA) unenforceable.  However, in some instances, an oversight board for a successor agency could reinstate such loans.  Section 34191.4, subdivision (b)(1), which provides for approval of loans from the sponsoring agency to the RDA, states, in part:  "[U]pon application by the successor agency and approval by the oversight board, loan agreements entered into between the [RDA and the sponsoring agency] shall be deemed to be enforceable obligations provided that the oversight board makes a finding that the loan was for legitimate redevelopment purposes."  Section 34191.4, subdivision (b)(2)(A) provides that "loan agreements" include "*[l]oans for money* . . . where the former redevelopment agency was obligated to repay the money it received pursuant to a *required repayment schedule*."  (Italics added.)

B

As did the parties and the trial court, we will limit our analysis to two of the loans, with the understanding those two loans are representative of the remaining 11 loans.  The analyzed loans were labeled "Loans 3 and 4" or, collectively, the "Central

---

[4]  For a summary of the Dissolution Law, see *Matosantos, supra*, 53 Cal.4th at pp. 250-251 and *City of Brentwood v. Campbell* (2015) 237 Cal.App.4th 488, 494.

Business District Loans," during these proceedings. Loan 3 was for $192,100 in January 1996, and Loan 4 was for $246,700, disbursed in two payments of $200,000 and $46,700, in October 1996 and January 1997, respectively. The combined total of all the loans from Fresno to the former RDA identified in this litigation was more than $6 million, but, as noted, we will limit our analysis to Loans 3 and 4.

After the former RDA's successor agency received a finding of completion under section 34179.7, the successor agency's oversight board adopted resolutions finding that the loans from Fresno to the former RDA were enforceable obligations. However, Finance determined Loans 3 and 4 were unenforceable, finding the loan documentation did not support enforceability under section 34191.4. Fresno filed in the trial court a petition for writ of mandate under Code of Civil Procedure section 1085, challenging Finance's denial of reinstatement of the loans.

The trial court considered five documents to determine whether Loans 3 and 4 were eligible for reinstatement under section 34191.4:

(1) A 1963 agreement between Fresno and the former RDA concerning repayment of advances (the 1963 Agreement). This agreement provided that sums, either in money or the value of services, Fresno advanced to the former RDA for the Central Business District renewal project would be repaid to Fresno. The 1963 Agreement did not actually advance money but, instead, provided a framework for advancing and repaying money. It required the former RDA each year to furnish to Fresno a promissory note for the amount advanced to the former RDA in that fiscal year. It also provided: "All revenues received by the [RDA] pursuant to this Agreement shall be paid to City as soon as the same shall be received . . . ." "[H]owever, payment upon said note and each of them shall not commence until any and all bonded indebtedness of [the RDA] . . . shall have been repaid . . . ." The 1963 Agreement provided that each promissory note would bear interest at the rate of 4 percent per annum.

4

(2) A Cash Account Report. This report showed transactions in the former RDA's bank account, including deposits and disbursements. It reflected the following three deposits, labeled as loan proceeds on the Central Business District project: $192,100 on January 26, 1996; $200,000 on October 14, 1996; and $46,700 on January 24, 1997. This report was audited as part of the former RDA's audited financial statements. The entries do not state the source of the funds other than "LOAN PROCEEDS." Fresno submitted an additional document purporting to show that the deposits of loan proceeds in the Cash Account Report were from Loans 3 and 4, but the trial court did not rely on it because Fresno did not explain who prepared the report and when it was prepared. The additional document also did not establish Fresno was the source of the funds received.

(3) A Reconciliation Statement. This document, identified as for "Tax Year 1997-98," reflects seven rows of amounts purporting to show indebtedness based on promissory notes. As the trial court noted, however, there is no proof these purported promissory notes actually existed because Fresno did not produce promissory notes. The Reconciliation Statement also does not identify who holds the promissory notes, to whom the former RDA is indebted, or payment terms and interest rates for the promissory notes.

(4) Fiscal Year 1997 and 1998 Budget Reports. The reports reflect receipt of "Loan Proceeds" for the Central Business District project matching the amounts for Loans 3 and 4. However, as the trial court observed, the budget reports do not identify the lender or the terms relating to the loan proceeds.

(5) Financial Statements/Auditor's Report for fiscal year ending June 30, 1998. In this audited report showing advances received from Fresno, two entries appear to be consistent with Loans 3 and 4. One entry states: "Central Business District - $192,100 advance of January 26, 1996, interest rate at 5.49%." And another entry states: "Central Business District - $246,700 advance [of] June 30, 1997, bearing interest at 6.0%."

In a similar report, however, for the fiscal year ending June 30, 1996, the statement included the Central Business District advance of January 26, 1996, for $192,000 in a list of cash advances to the former RDA from Fresno.  At the bottom of the list, the report stated:  "The above advances are payable *on demand* and secured by and payable from the incremental property tax revenues of the redeveloped properties. *Payments on the advances and related interest expenditures are based on budgetary priorities as approved by the [former RDA].*"  (Italics added.)

At the end of its analysis of the Financial Statements/Auditor's Report for fiscal year ending June 30, 1998, the trial court wrote:  "When combined with the Cash Account Report and the Budget Reports, this is strong evidence that it was indeed the City that loaned $192,100 and $246,700, in cash, to the RDA on the dates and pursuant to the terms listed in the financial statements."  In a footnote, the trial court added:  "In other words, the financial statements supply the information on the source of the loans that was missing from the Cash Account Report, the Reconciliation Statement, and the Budget Report."

Having found that Fresno successfully established it made Loans 3 and 4 as "cash loans" to the former RDA, the trial court proceeded to address whether there was a "required repayment schedule."  Even though the 1963 Agreement required that the loans to the former RDA be reflected in promissory notes and the interest rates for Loans 3 and 4 did not match the 4-percent rate stated in the 1963 Agreement, the trial court looked to the 1963 Agreement to establish the repayment terms.  The trial court concluded that, because the 1963 Agreement required the former RDA to pay to Fresno all tax-increment revenues it received after having satisfied the former RDA's bond indebtedness obligations, the 1963 Agreement provided a "required repayment schedule."

Having analyzed two of the 13 loans, the trial court entered a judgment that granted the petition for writ of mandate in part and remanded the matter to [Finance] to

conduct its analysis of the remaining 11 loans in a manner consistent with the trial court's analysis of Loans 3 and 4. Finance filed a notice of appeal, but this court dismissed the appeal because it was from an interlocutory remand, not a final judgment. (*City of Fresno v. Department of Finance* (C083084, June 5, 2019) [nonpub. opn.].) Finance then conceded that, in applying the trial court's analysis of Loans 3 and 4 to the remaining 11 loans, Finance would be constrained to conclude that all of the loans were enforceable obligations under section 34191.4. The trial court entered judgment granting the petition for writ of mandate as to all 13 loans.

## STANDARD OF REVIEW

"Courts exercise limited review in ordinary mandamus proceedings. They may not reweigh the evidence or substitute their judgment for that of the agency. They uphold an agency action unless it is arbitrary, capricious, lacking in evidentiary support, or was made without due regard for the petitioner's rights. [Citations.] However, courts must ensure that an agency has adequately considered all relevant factors, and has demonstrated a rational connection between those factors, the choice made, and the purposes of the enabling statute. [Citation.] Because trial and appellate courts perform the same function in mandamus actions, an appellate court reviews the agency's action de novo. [Citation.]" (*Sequoia Union High School Dist. v. Aurora Charter High School* (2003) 112 Cal.App.4th 185, 195 (*Sequoia Union*).)

"In a petition for writ of mandate brought pursuant to Code of Civil Procedure section 1085 . . . , the petitioner bears the burden of pleading and proving the facts on which the claim for relief is based. (Code Civ. Proc., § 1109; Evid. Code, § 500; [citations].)" (*California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1153-1154.) Therefore, Fresno bore the burden of pleading and proving facts in the trial court to establish Fresno loaned money to the former RDA with a required repayment schedule. The trial court's task in this regard was to determine whether substantial evidence supported Finance's determination. This is just another way

7

of saying the trial court's task was, without reweighing the evidence, to determine whether Finance's determination was "lacking in evidentiary support." (*Sequoia Union, supra*, 112 Cal.App.4th at p. 195.) In other words, a mandamus proceeding is not a species of trial de novo in the trial court; instead, it is only a review of an agency's action whether it was "arbitrary, capricious, lacking in evidentiary support, or was made without due regard for the petitioner's rights. (*Ibid*.)

Fresno asserts Finance denied reinstatement of Loans 3 and 4 based solely on the absence of promissory notes to support the loans. With this assertion, Fresno attempts to limit Finance's arguments and our review to whether the loans could be reinstated without promissory notes. (See *Southern Cal. Edison Co. v. Public Utilities Com.* (2000) 85 Cal.App.4th 1086, 1111 ["We may not affirm an agency's action on a basis not embraced by the agency itself."].) However, we conclude Fresno's attempt to thus limit Finance's arguments and our review is unavailing because Finance's denial of reinstatement of the loans was not so limited. While the correspondence between Finance and Fresno shows that Finance asked repeatedly for the promissory notes supporting Loans 3 and 4, it appears Finance requested the promissory notes because they would provide evidence to support reinstatement of the loans, not necessarily that promissory notes were the *sine qua non* of an agreement. Furthermore, the 1963 Agreement stated the former RDA would provide a promissory note for the cash advances received from Fresno each fiscal year, so it is understandable that Finance would look for promissory notes as evidence of loans. In the end, Finance denied reinstatement of the loans because Loans 3 and 4 did not meet the requirements of section 34191.4, subdivision (b) for reinstatement. We will not, therefore, limit our review to whether a loan may be reinstated under 34191.4, subdivision (b) without a promissory note evidencing the loan.

Fresno notes that Finance denied reinstatement of Loans 3 and 4, which did not have promissory notes, but approved reinstatement of other loans that were evidenced by

8

promissory notes. We will not conclude from this circumstance that Finance must be limited on judicial review to whether a loan may be reinstated even though it was not supported by a promissory note. Finance has authority to ensure compliance with section 34191.4, subdivision (b) for each loan. (§ 34179, subd. (h).) Thus, it was justified in treating each loan separately, considering the differing evidence provided by Fresno for the loans.

## DISCUSSION

Finance contends Fresno did not establish that Loans 3 and 4 were for money and that the former RDA was obligated to pay on a schedule. We will proceed directly to whether the former RDA was obligated to repay Fresno "pursuant to a required repayment schedule." (§ 34191.4, subd. (b)(2)(A).)

Fresno's argument regarding a required repayment schedule depends entirely on whether Loans 3 and 4 were made under the 1963 Agreement. According to Fresno, the 1963 Agreement provided that "revenues received by the [former RDA] pursuant to this Agreement shall be paid to the City as soon as the same shall be received" by the former RDA, but that "payment upon said note and each of them shall not commence until any and all bond indebtedness of the Agency . . . shall have been repaid." Thus, the former RDA was obligated, under the 1963 Agreement, to use all of its revenue to pay its bonded indebtedness then to repay the loans. The trial court also relied on this provision of the 1963 Agreement to conclude Loans 3 and 4 had a required repayment schedule.

Even if we were to assume that the 1963 Agreement established a "schedule" for repayment -- a question that seems debatable -- the repayment schedule would only assist Fresno in this case if Loans 3 and 4 were made under the 1963 Agreement. If Loans 3 and 4 were not made under the 1963 Agreement, there was no required repayment schedule.

There is some evidence to support Fresno's contention that Loans 3 and 4 were made under the 1963 Agreement. For example, the 1963 Agreement referred to the

9

Central Business District renewal project and stated that the former RDA would become indebted to Fresno for "any and all sums which are advanced by the City in furtherance of the development of the [Central Business District renewal project] whether such sums be advanced by way of cash or the performance of services and the furnishing of materials." Fresno claims the explicit reference to the Central Business District renewal project in the transfers for Loans 3 and 4 is sufficient evidence that the loans were, in fact, made under the 1963 Agreement. According to this assertion, even though there are no loan documents specifically referencing Loans 3 and 4, those loans were made for the Central Business District renewal project, and the 1963 Agreement also referred to loans made for the Central Business District renewal project.

But under our standard of review, we do not review the record for sufficient evidence to support the petitioner's factual assertions; instead, we review the record for sufficient evidence to support the Agency's decision. (*Sequoia Union, supra*, 112 Cal.App.4th at p. 195.) Such a distinction makes a difference here, because although there is evidence that Loans 3 and 4 were made under the 1963 Agreement, there is also evidence that Loans 3 and 4 were *not* made under the 1963 Agreement.

The following evidence would support a fact-finder in concluding that Loans 3 and 4 were not made under the 1963 Agreement. The 1963 Agreement was executed 33 years before Loans 3 and 4. There is no document stating that Loans 3 and 4 were made under the 1963 Agreement. The 1963 Agreement provided for a 4 percent interest rate, but Loans 3 and 4 had interest rates of 5.49 and 6 percent, respectively. The financial statement and audit report for the fiscal year ending June 30, 1996 indicated that the cash advances on that statement (including Loan 3) were payable "on demand," "based on budgetary priority as approved by the [former RDA]," which is not only inconsistent with a "schedule" of repayment, but is also inconsistent with the requirement of the 1963 Agreement that "revenues received by the [former RDA] pursuant to this Agreement shall be paid to [the] City as soon as the same shall be received," subject only to "any and

10

all bonded indebtedness of the Agency . . . ." Fresno did not produce evidence showing that the former RDA made payments on Loans 3 and 4 as soon as it received revenue not required to satisfy its bond indebtedness obligations. And Fresno failed to produce promissory notes supporting Loans 3 and 4, even though the 1963 Agreement required the former RDA to deliver to Fresno a promissory note for loans made during each fiscal year. With all these deviations from the 1963 Agreement, a factfinder would be justified in concluding that Loans 3 and 4 were made under an agreement or multiple agreements independent of the 1963 Agreement. Indeed, Fresno makes no argument that it could not have loaned money to the former RDA under an agreement other than the 1963 Agreement.

Another way of describing the state of the record is that the evidence does not show, as a matter of law, that Loans 3 and 4 were made under the 1963 Agreement. Therefore, we cannot say Finance's denial of reinstatement of Loans 3 and 4 was lacking in evidentiary support. On the other hand, we can say Fresno failed to carry its burden of establishing that Finance's determinations were lacking in evidentiary support. (*Sequoia Union, supra*, 112 Cal.App.4th at p. 195.)

Fresno makes several arguments that the deviations from the 1963 Agreement do not preclude a finding that Loans 3 and 4 were made under the 1963 Agreement. For the most part, these arguments lack merit because they do not recognize that Fresno bore the burden of showing that Finance's decision lacked evidentiary support. (*Sequoia Union, supra*, 112 Cal.App.4th at p. 195.) We address each argument in turn.

Fresno argues the former RDA's failure to perform on Loans 3 and 4 consistent with the requirements of the 1963 Agreement is insignificant because, in Fresno's words, "failure to perform nonmaterial terms of an agreement is not a breach and does not invalidate the contract." This argument, however, misses the point that the inconsistencies between the 1963 Agreement and Loans 3 and 4 constitute substantial

11

evidence Loans 3 and 4 were not made under the 1963 Agreement.  It is not a question of breach or invalidation of a contract.

Fresno also argues:  "[T]he fact that the Successor Agency [Fresno] could not locate any statements or promissory notes for [Loans 3 and 4], made decades ago, does not mean that they did not exist at one time.  [Finance] cannot use the absence of evidence to infer that it never existed.  Nor were promissory notes required to finalize the Agreement.  Indeed, the 1963 Agreement does not condition the [former] RDA's indebtedness on a promissory note."  Contrary to Fresno's argument, the absence of statements and promissory notes supports a conclusion Loans 3 and 4 were not made under the 1963 Agreement.  Fresno had the burden to produce evidence to the contrary.

Fresno further argues there was some evidence from which it can be inferred the former RDA complied with the required repayment schedule in the 1963 Agreement.  But Fresno bore the burden of establishing that fact.  And, even if it is true the former RDA complied with the repayment provisions of the 1963 Agreement, there is other evidence Loans 3 and 4 were not made under the 1963 Agreement -- for example, the inconsistent interest rates, the inconsistent repayment requirements, and the absence of promissory notes.

Fresno additionally argues the difference in the stated interest rates is irrelevant because the Dissolution Law provides for an interest rate of 3 percent on reinstatement of a loan between a sponsoring agency and its former RDA.  (See §  34191.4, subd. (b)(3).)  This argument also misses the legal point, which is that the difference in the interest rates in the 1963 Agreement and the audited financial statements with respect to Loans 3 and 4 is evidence that Loans 3 and 4 were not made under the 1963 Agreement.

Indeed, there is no evidence in this record that Fresno and the former RDA had the 1963 Agreement in mind when they entered into Loans 3 and 4.

12

We therefore conclude Finance's determination that Loans 3 and 4 could not be reinstated under 34191.4, subdivision (b) was not lacking in evidentiary support.

DISPOSITION

The judgment is reversed, and the matter is remanded with directions to enter judgment denying the petition for writ of mandate. Appellants are awarded their costs on appeal. (Cal. Rules of Court, rule 8.278(a).)

           /S/
           MAURO, J.

We concur:

  /S/
HULL, Acting P. J.

  /S/
DUARTE, J.